ORIGINAL

Richard D. McCune, State Bar Number 132124
Joseph L. Richardson, State Bar No. 212206
Jlr@mccunewright.com
McCUNE LAW GROUP
3281 East Guasti Road, Ste. 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Attorneys for Plaintiffs
E.M. through Conservators CHARLES M. and TERRY M.;
CHARLES M.

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

NOV 30 2022

BY: _____ Michelle Mungula, Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN BERNARDINO

| | |
|---|---|
| E.M,, by and through her conservators CHARLES M. and TERRY M; CHARLES M.<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; FAMILY ASSISTANCE PROGRAM; STELLA MARIS GROWTH CENTER; CITY OF MORENO VALLEY; STATE OF CALIFORNIA; and DOES 1 through 25, inclusive.<br><br>Defendants. | Case No: **CIV SB 2 2 2 1 6 2 3**<br><br>**COMPLAINT OF PLAINTIFFS E.M. (BY AND THROUGH HER CONSERVATORS CHARLES M. AND TERRY M.) AND OF CHARLES M; FOR:**<br><br>1.  **BREACH OF MANDATORY DUTIES**<br>2.  **BREACH OF DUTY OF CARE ARISING UNDER SPECIAL RELATIONSHIP**<br>3.  **NEGLIENCE**<br>4.  **VIOLATION OF CIVIL RIGHTS U.S.C. 1983**<br>5.  ***MONELL*-RELATED CLIAM**<br>6.  **NEGLIENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiffs, E.M., by and through her conservators CHARLES M. and TERRY M., and CHARLES M., who collectively through this Complaint allege against all Defendants as follows:

### JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to Article VI, § 10 of the Constitution of the State of California.

-1-
Complaint

2. Venue is proper in San Bernardino County because Plaintiffs are residents of this county, and a substantial portion of the events, acts omissions and transactions complained of herein occurred in this County. Plaintiffs have been damaged in an amount in excess of the jurisdictional amount of this Court.

**THE PARTIES**

3. Plaintiff, E.M. (sometimes referred to as "E.M." or "Plaintiff E.M."), was and is the daughter of conservator CHARLES M. (sometimes referred to as "CHARLES M" or "Plaintiff CHARLES M.") and the stepdaughter of TERRY M. (sometimes referred to as "TERRY M."). During the periods of time at issue in this lawsuit, CHARLES M., TERRY M., AND E.M. primarily resided in San Bernardino County, State of California.

4. Plaintiff, CHARLES M. (sometimes referred to as "CHARLES M." or "Plaintiff CHARLES M.") is, and at all times herein mentioned was a resident of San Bernardino County, State of California.

5. DEFENDANT, STATE OF CALIFORNIA, ("STATE") is a state in the United States of America.

6. DEFENDANT, COUNTY OF SAN BERNARDINO, ("SB COUNTY") was and is a public entity and one of the Counties in the State of California. SAN BERNARDINO CHILDREN AND FAMILY SERVICES DEPARTMENT ("CFS") was and is a subdivision or entity of SB COUNTY.

7. DEFENDANT, CITY OF MORENO VALLEY ("MOVAL") is an incorporated city located in the County of Riverside, State of California.

8. DEFENDANT, FAMILY ASSISTANCE PROGRAM ("FAP"), is a non-profit public benefit corporation located in the County of San Bernardino, State of California. OUR HOUSE YOUTH SHELTER ("OUR HOUSE") is a non-profit youth shelter and is a subdivision of FAP, which during the times relevant for this lawsuit, was located in the County San Bernardino, State of California.

9. DEFENDANT, STELLA MARIS GROWTH CENTER ("STELLA MARIS") is a non-profit public benefit corporation, with a location in Riverside County, State of California.

10. California Community Care Licensing Division ("CCLD") is a state agency that is responsible for promotion of the health, safety, and quality of life of each person in community care through the administration of an effective collaborative regulatory enforcement system. CCLD performs oversight, including inspections and reports, of entities which serve children, including FAP/OUR HOUSE and STELLA MARIS.

11. Plaintiffs are informed and believes, and thereon alleges, that all of the foregoing entities are funded by, supervised, managed, and/or controlled by the State of California.

12. CHARLES M. and TERRY M. bring this lawsuit on behalf of Plaintiff E.M. as conservators for E.M. Additionally, as a separate Plaintiff related to his status as the biological father of E.M., CHARLES M. brings claims on his own behalf herein. E.M. and CHARLES M. are sometimes collectively referred to herein as "PLAINTIFFS."

13. Plaintiffs are informed and believes, and thereon alleges, that each of the Defendants was, at all times herein mentioned, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship. Plaintiffs are further informed and believes that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.  Plaintiffs are further informed and believes and thereon alleges that each of the named Defendants and all DOES sued herein under fictitious names are jointly or severally liable to Plaintiffs for their damages alleged herein. At all times mentioned, Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. STELLA MARIS, STATE, SB COUNTY, MOVAL, and FAP, along with DOES 1-25, are sometimes collectedly referred to as "DEFENDANTS."

14. Plaintiffs are informed and believes and based thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by such Defendants.

15. Plaintiffs are informed and believes and based thereon alleges that at all times herein mentioned each of the Defendants was the agent, joint venturer, statutory partner and/or representative of

each of the remaining Defendants, and in doing the things alleged below, was acting within the scope of such agency and/or employment. Plaintiffs are informed and believes and thereon alleges that each of the named Defendants and all DOES sued herein under fictitious names are jointly or severally liable to Plaintiffs for their damages alleged herein.

### **FACTUAL ALLEGATIONS**

16. In or about August 2021, S.B. COUNTY took custody of seventeen-year-old E.M. Despite the fact that E.M.'s father, CHARLES M., and stepmother, TERRY M. used every available option, E.M.'s mental health started to deteriorate. To assure E.M.'s safety and provide better resources, CHARLES M. and TERRY M. hoped that San Bernardino County Children and Family Services Department ("CFS") could find a placement suitable to handle E.M.'s mental issues.

17. As of August 2021, E.M. was a dependent child in SB COUNTY's custody, supervision, care, and control. Through its agencies, SB COUNTY and its assigned workers had an affirmative obligation to ensure the continued safety and security of the child and ensure that she was provided at least minimally adequate care and supervision.

18. At the time that SB COUNTY took custody, it was known and/or should have been known by SB COUNTY that E.M. had a history of mental health, and general neglect. Specifically, E.M. had been admitted due to her severe "manic episodes," homicidal ideations, and suicide attempts. E.M.'s severe mental health needs, impulsive and poor behavior caused concerns that could lead to more serious safety issues.

19. In an effort to provide their already damaged daughter with the tools she needed to recover from the trauma of abuse, CHARLES M. and TERRY M. entrusted SB COUNTY with her care. In turn, SB COUNTY put E.M. in places where she experienced new forms of abuse and neglect that exacerbated her psychological issues.

//
//
//

**PLACEMENT OF E.M. IN OUR HOUSE, STELLA MARIS, AND OUR HOUSE AGAIN.**

20. For purposes of this Complaint and organization purposes, E.M. was placed at the following residences in this order: OUR HOUSE, STELLA MARIS, and OUR HOUSE again.

**E.M.'s PLACEMENT AT FAP (OUR HOUSE)**

21. Plaintiff CHARLES M. and TERRY M. were informed by SB COUNTY (through CFS) that finding an appropriate placement for E.M. had been challenging due to her history of poor behaviors, mental health challenges, and limited placement resources. As a result of this, in or about August 2021, SB COUNTY, CFS, FAP and DOES 1-25 inclusive, placed, and/or participated in the decision to place E.M. at OUR HOUSE, a youth in crisis shelter for runaway and homeless youth located at 1387 Jasper Ave, Mentone, CA 92539. Youth are placed in OUR HOUSE, a division of FAP, while awaiting placement.

22. When E.M. was placed at OUR HOUSE, CHARLES M. and TERRY M. were informed by CFS that OUR HOUSE housed both male and female minors, were reassured that both sexes would be separate, and that E.M. would be provided with a structured, yet compassionate environment. CHARLES M. and TERRY M. were pleased with this information and reckoned that E.M. was placed in good hands at OUR HOUSE.

**E.M. PLACEMENT AT STELLA MARIS**

23. Following E.M.'s temporary placement at OUR HOUSE, E.M. was placed at STELLA MARIS, a short-term therapeutic residence/group home for adolescent girls located at 13530 Sylmar Drive, Moreno Valley, CA 92553 on or about August 24, 2021. Because STELLA MARIS is a short-term residential therapeutic program ("STRTP") facility, it is imperative that children under their supervision are triple watched due to the fact that most of the adolescent girls placed there have been on suicide watch or have severe emotional trauma.

24. Plaintiff CHARLES M. and TERRY M. were pleased that E.M. was placed in STELLA MARIS, a STRTP, because this facility was capable of handling children with special health care needs, like E.M. CHARLES M. and TERRY M. were hopeful that E.M. would be there for as long as possible and benefit as a result.

**E.M. HOME VISTATION ON MARCH 7, 2022.**

25. On or about March 7, 2022, during her weekend visitation from STELLA MARIS, E.M. came to her stepmother TERRY M., emotionally upset and disturbed. Concerned, TERRY M. asked E.M. what is wrong. E.M. told TERRY M. that what she was about to tell her "was not good" and "[TERRY] was going to hate her because it is really bad." TERRY M. reassured E.M. that everything was going to be all right and encouraged E.M. to tell her what happened. E.M. informed TERRY M. that she was having "sex for money" and "it was not by choice." E.M. proceeded to tell TERRY M. that she can tell her some things but show her others. With that, she began to explain the issues she was experiencing, and showed TERRY M. her Instagram and Snapchat messages.

**E.M. RECOUNTS HER EXPERIENCE AT OUR HOUSE**

26. TERRY M. learned from E.M. experienced the following at OUR HOUSE:

- Boys sitting on the bed with E.M. in her room;
- Boys being in a E.M smoking marijuana on a vape pen;
- Youth leaving OUR HOUSE and going on errands for alcohol which they called "bottle runs."
- OUR HOUSE staff buying tobacco for the youth housed there; and
- OUR HOUSE staff smoking weed with E.M.

27. E.M. told TERRY M. that OUR HOUSE staff members were aware that the youth smoked inside the house but had set out specific times when it could be done. Further, when OUR HOUSE had to call authorities for incidents that took place, OUR HOUSE staff members would give the resident children a "heads up" or a warning to clean up their marijuana and hide their alcohol.

28. Lastly, E.M shared that an OUR HOUSE staff member found E.M. having drunk sex with a boy at OUR HOUSE and the Police was involved. However, OUR HOUSE failed to share that information with CFS, nor were TERRY M. or CHARLES M. informed. TERRY M. only found out because E.M. had the courage to tell her.

**E.M. RECOUNTS HER EXPEREINCE AT STELLA MARIS: SEX TRAFFICKING AND ASSAULT**

29. After sharing her experience at OUR HOUSE, E.M. began to share her experience at STELLA MARIS. To TERRY M.'s horror, her worst nightmare came true. While under the supervision of STELLA MARIS, E.M. was a victim of sex trafficking and was sexually assaulted by an adult male, Mike Williams. The foregoing took place constantly.

30. Through the Instagram messages, TERRY M. learned that E.M. had been forced into being a sex trafficking victim. TERRY M. discovered that J.J. had recruited E.M. for a pimp known as "Trap Zilla." J.J. was considered the "bottom bitch" who would report back to Trap Zilla and do what he told her to do. E.M. became known as "Slim" and would leave (or go AWOL) STELLA MARIS for days at a time and would have sexual intercourse in different cars or at different parks in Moreno Valley with Trap Zilla's "clients." The only person to see Trap Zilla would be J.J., who would meet up with him and give him money from E.M.'s sex work. She would return back to STELLA MARIS unquestioned by its staff, as if she had never been away, or had permission to be gone.

31. In addition, TERRY M. learned that E.M. and J.J. had provocative videos together that would be sent to "clients" giving them the option to select which person they wanted to have sex with. Once selected, E.M. would go on "dates" to have sex with them. E.M. was frequently selected, valued more for her outward appearance and her ability to please "clients." She was sex trafficked for about three months.

32. TERRY M. consoled E.M. and asked why E.M. did not tell them sooner. E.M. shared that at first it was all "fun and games" she was young, "independent" and was able to do things how she seemed fit. Shortly, E.M. noticed that it stopped being "fun," and it started to become forceful. J.J. often hit her and verbally harassed her. When E.M. wanted out, she was threatened by TRAP ZILLA stating that if she spoke about this or reported this to authorities or her parents, he would "kill them." E.M. felt like she had no other choice, and she had to do it. She evaded coming home; she was scared but most importantly wanted to protect her family from harm.

***Sexual Assault by Mike Williams***

33. Also, during their March 7th, 2022, conversation, TERRY M. saw a sex video of E.M. being sexually assaulted by an adult male, Mike Williams ("MIKE").  Specifically, on or about January 30, 2022, J.J. had arranged for E.M. and herself to meet with some people at a "kickback" or a small house gathering. MIKE was the one that had picked up the girls that night and drove them to the location. After socializing, E.M. eventually ended up having sex with MIKE that night. When the time came for them to go home, Mike dropped J.J. and E.M. back at STELLA MARIS.

34.  On or about January 31, 2022, MIKE contacted J.J.'s phone stating that he "wanted to see his girl" aka E.M. When MIKE arrived, J.J. and E.M. snuck out and sat in his car. MIKE was with another person, who J.J. ended up socializing with. E.M. learned from MIKE that he had been drinking alcohol (Bacardi and Pink Whitney) and taking pills (ecstasy) that night.

35. MIKE tried to coerce E.M. into taking ecstasy that night, but E.M. declined. Frustrated, MIKE started to become aggressive, demanding E.M. to allow him into STELLA MARIS. MIKE's aggressive behavior began to frighten E.M., and she reluctantly agreed and brought MIKE into STELLA MARIS via her bedroom window. Shortly after entering STELLA MARIS, MIKE and E.M. entered the bathroom shower and began to have sex.

36. Staff members from STELLA MARIS noticed that E.M. and J.J. had returned from AWOL, but were acting strange. Ms. Kiara, a STELLA MARIS staff member, went to check on both girls and found out that MIKE was with E.M., and J.J. was with the person that arrived with MIKE in the car. Ms. Kiara demanded that MIKE and his friend leave. Both men jumped out the window and left.  TERRY M. was aware of the incident E.M. shared above, but not to the extent E.M. had shared. More specifically, on January 31, 2022, at 5:11am, TERRY M. received a text message from Tracy, the house manager at the time E.M. resided at STELLA MARIS, stating the following:

Emajahnay came from awol and was acting really strange so staff was checking on her it was her and another resident come to find out Emajahnay had came back with a guy her and the other young lady Emajahnay had walked through the front door and the guys came through the window staff told the guys to leave and they jumped out the window and left any questions please call

■ FaceTime

37.   Tracy did not disclose that E.M. was sexually assaulted. Plaintiff is informed and believes, and thereon alleges, that STELLA MARIS did not file a police report or report this incident to CFS. Neither CHARLES M. nor TERRY M. were notified of the issues taking place at STELLA MARIS at the level that the staff knew.

38.   After E.M. disclosed her experiences while staying at STELLA MARIS, TERRY M. questioned where the staff were to prevent this from happening. E.M. expressed that STELLA MARIS pretended as though their center cared for them, especially when the STATE would inquire through their inspections.

39. E.M. stated that STELLA MARIS was aware of what was happening to her because she informed a STELLA MARIS' staff member that she was "prostituting" herself, but the staff member did not report it or do anything about it.

40. In addition to the foregoing, E.M. informed TERRY M. that she often met her dates at a park in Moreno Valley, called Moreno Valley Community Park. Several times, she had sex at that park as directed by MIKE and/or TRAP ZILLA, who knew that they could force E.M. to engage in sexual activity without any pushback because the park was known as a place where such activity occurred out of the sight of city employees, police, or security.  Fundamentally, Moreno Valley Community Park was not even safe for young children.  And it was fertile ground for the activity that victimized E.M. constantly.

41. TERRY M. immediately reported E.M. encounters to the police on March 7th, 2022. Currently, the Riverside Police Department Sex Trafficking Task Force are investigating MIKE and TRAP ZILLA. Plaintiff is informed and believes, and thereon alleges, that neither perpetrator has been arrested.

42. While E.M. often confides things to TERRY M. initially, E.M.'s father, Plaintiff CHARLES M. will normally learn things from TERRY M. CHARLES M. was shocked and saddened to learn all of the issues that had taken place involving his daughter. As a father that has sought to be there for his daughter as best, he could, despite his own personal struggles, his view of the videos and pictures shared by her daughter was sickening, shocking, and disheartening. While difficulties with E.M. forced him and TERRY M. to make a decision to allow SB COUNTY to have custody for his daughter for a time, the whole goal behind this was to put her in a safe environment. Then, the beginning of her help and maintenance for what were already a myriad of problems could take place. In fact, the custody of SB County, as well as the placement of E.M. in STELLA MARIS and FAP/OUR HOUSE deepened E.M.'s problems and amplified her father's despair.

43. After disclosing this information to TERRY M., E.M. became overwhelmed and emotionally unwell. On March 7, 2022, E.M locked herself in the bathroom and tried to commit suicide. As a result, E.M. was hospitalized that same day.

44. TERRY M. contacted E.M.'s social worker, Wendy Smith ("Wendy"), to update her on everything that has occurred since E.M.'s home visitation and attempted suicide. TERRY M. tried to contact Wendy countless times via phone text messages, but Wendy never responded. TERRY M. was forced to call the CFS crisis team, who tried to contact Wendy themselves, but did not receive a response from her either.

45. Since E.M. was removed from their custody, CHARLES M. and TERRY M. were disgusted and appalled by the way E.M. was treated and supervised. CHARLES M. and TERRY M. had serious concern about E.M. going back to STELLA MARIS.

**E.M. SECOND PLACEMENT AT OUR HOUSE**

46. Following being at STELLA MARIS, E.M. was again in CPS custody. She actually slept in the CPS office several days at once point. After all that E.M. went through the first time at OUR HOUSE, she actually ended up back there. Specifically, CFS once again sent E.M. back to OUR HOUSE despite having knowledge of what had happened while she was there before. Both

CHARLES M. and TERRY M. were livid and questioned why E.M. was placed back at OUR HOUSE. CFS explained that due to E.M.'s behavior at STELLA MARIS, it was difficult to find a placement for her.

47. When CFS finally learned (from CHARLES M. and TERRY M.) that E.M. had been sex trafficked, CFS removed E.M. from FAP/OUR HOUSE and placed E.M. at an undisclosed location designed for women that were sex trafficked. E.M. remained there for about three weeks.

**CCLD Notification and Inaction.**

48. As CHARLES M. and TERRY M. learned of issues that were occurring with Plaintiff E.M. at STELLA MARIS and FAP/OUR HOUSE, they notified CCLD, which has a monitoring and oversight role with centers related to minor's care, including both STELLA MARIS and FAP/OUR HOUSE. Specifically, TERRY M. did many written complaints an inquiries to CCLD, informing them of the goings on, and seeking related action. Plaintiffs are informed and believe, and based thereon alleges that CCLD made inspections at both sites and that, to a measurable extent, TERRY M. and CHARLES M.'s claims were substantiated. That being said, CCLD failed to clearly remedy the issues so as to make the centers a safe place for E.M. or other children. More, CCLD failed to adequately monitor issues as these centers to avoid the issues that occurred involving Plaintiff E.M. in the first instance.

**Temporary Conservatorship**

49. CHARLES M. and TERRY M. initially believed CFS involvement would help secure a higher level of placement for E.M. and give her the help she needed. However, CHARLES M. and TERRY M. began to believe that foregoing custody of E.M. was a mistake.

50. As of August 11, 2022, CHARLES M. and TERRY M. had temporary conservatorship over E.M. On November 4, 2022, CHARLES M. and TERRY M. received an Amended Temporary Conservatorship confirming that CHARLES M. and TERRY M. had the authority to bring the instant lawsuit.

**CLAIMS REQUIREMENTS**

51. E.M., by and through her conservators, CHARLES M. and TERRY M., and CHARLES M. have satisfied the Claims presentation requirement by filing a claim with the STATE, SB COUNTY, and MOVAL. Each of the foregoing claims were rejected either in writing of by operation of law.

**FIRST CAUSE OF ACTION**

**BREACH OF MANDATORY DUTIES**

**(Plaintiff E.M. Against Defendants STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25)**

52. Plaintiffs incorporate and re-allege each allegation set forth above as if fully set forth herein.

53. In or about August 2021, E. M. then a minor, was placed in a youth shelter, OUR HOUSE, operated by Defendant FAP. Plaintiffs are informed and believe, and thereon allege, that said youth shelter was funded, overseen and/or regulated by Defendant SB COUNTY. By later in 2021 and into 2022, Plaintiff E.M., was placed in a youth shelter operated by Defendant STELLA MARIS. Following that time, Plaintiff E.M. was again placed in OUR HOUSE.

54. Plaintiffs are further informed and believe and thereon allege that, during the operative times in this complaint, Plaintiff E.M. was in the custody of SB COUNTY, including but not limited to CFS.

55. Plaintiffs are informed and believe and thereon allege that, during the operative times in this complaint, Defendant STATE, through CCLD, had responsibilities related to the supervision and regulation of both STELLA MARIS and FAP.

56. During the period in question, then minor, E.M. was subjected to emotional abuse, sexual abuse/exploitation, and general neglect as described above. Plaintiffs are informed and believe and thereon allege that Defendants SB COUNTY, STATE, STELLA MARIS and FAP knew or should have known of the abuse being suffered and did nothing to prevent or to abate said abuse.

Said abuse included, but was not limited to, drug and alcohol use, and sexual abuse on the premises, taking E.M. off site for sex trafficking purposes for days at a time, and for "dates" at a local park.

57. Plaintiffs believes and thereon alleges that Defendants STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25, violated mandatory duties including, but not limited to those set forth in regulations in the California Department of Social Services (CDSS) Manual of Policies and Procedures (MPP) established pursuant to *Welfare & Institutions Code* §16501 and set forth in the San Bernardino Children and Family Services (CFS) Handbook.

58. Plaintiffs allege that specific regulations and policies violated by the Defendants STATE, SB COUNTY, STELLA MARIS, FAP, and DOES 1 through 25 include, but are not limited to the following:

    a. CDSS MPP Regulation 31-401 placement of E.M. with an in-state licensed facility trained and capable of meeting E.M.'s needs.

    b. CDSS MPP Regulation 31-405 by failing to fulfill social worker's responsibilities for placement.

    c. CDSS MPP REGULATION 31-410 by failing to fulfill the temporary placement requirements (Short-Term Residential Therapeutic Program ("STRTP")).

    d. CDSS MPP Regulation 31-501, by failing to report and/or investigate known and/or suspected neglect and/or abuse of E.M. as well as other minors placed with Defendant STELLA MARIS.

59. Plaintiffs allege that had Defendants STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25 breached their mandatory duties, then they would have been required to act upon evidence of the inappropriateness of E.M.'s placement with STELLA MARIS and FAP. and

-13-
Complaint

would not have been obligated to take measures to protect E.M. or to remove E.M. from the facilities where she was subjected to abuse, neglect and/or mistreatment. Therefore, as a proximate result of Defendant STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25's failure to fulfill their mandatory duties, E.M. suffered neglect, abuse, and/or mistreatment during the time she was in their care.

60. As a direct result of the acts and omissions of Defendants STATE, SB COUNTY, FAP, and STELLA MARIS, Plaintiff E.M. sustained general and special damages in amounts within the jurisdictional limits of this court according to proof at trial.

## SECOND CAUSE OF ACTION

### BREACH OF DUTY OF CARE ARISING UNDER SPECIAL RELATIONSHIP

**(Plaintiff E.M. Against Defendants STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25)**

61. Plaintiffs incorporates and re-alleges each allegation set forth above as if fully set forth herein.

62. A special relationship was established between E.M. (and similarly situated minors), and (each) STATE, SB COUNTY, FAP, and STELLA MARIS, under which each of the foregoing owed E.M. and similarly situated dependent minors a duty of due care and duty to protect these minors from foreseeable harm.

63. SB COUNTY has jurisdiction and control of County San Bernardino Children and Family Services (CFS) temporary placement in STRTP establishments, including but not limited to, individuals and facilities established, regulated, licensed, and controlled under the Community Care Facilities Act. Defendant SB COUNTY and DOES 1 through 25, inclusive, has primary jurisdiction over the placement, protection, and care of minor dependents of SB COUNTY while they are in STRTPs.

64. Plaintiffs allege that Defendant SB COUNTY and DOES 1 through 25 maintain primary jurisdiction, control, and responsibility for the health, safety, protection, and well-being, of minor dependents while in STRTP, which co-exist with the entities and individuals to which it delegates authority, including STRTP agencies and other STRTP providers. As a result, SB

-14-
Complaint

COUNTY and Does 1 through 25 therefore at all times retain primary jurisdiction, control, and responsibility for insuring the health, safety, protection, and well-being of minor dependents while in STRTP.

65. Defendant SB COUNTY has the primary jurisdiction and a continuing responsibility to investigate the background, history, and qualification of all persons who provide STRTPs, or who own, operate, or are employed by community care facilities, to ensure the health, safety, well-being and protection of minors placed into STRTPs. Plaintiffs reasonable relied on SB COUNTY to perform its continuing duty to ensure the qualifications of persons providing STRTPs, including co-defendants STELLA MARIS and FAP.

66. In or about August 2021, minor, E.M., was a dependent minor of the SB COUNTY and was in the custody, supervision, care and control of Defendant SB COUNTY for the purpose of providing care, supervision, and control of E.M.'s health, welfare, safety, and care. At such time the rights, duties, and responsibilities of CHARLES M. and TERRY M., were suspended, and such duties and obligations were assumed by SB COUNTY, and such individuals or entities to whom it delegated such duties. Plaintiffs therefore relied upon SB COUNTY to perform its oversight, quality of care inspections, and other duties, and upon CFS and/or private STRTP providers and agencies and agencies with whom it contracts, to provide such supervision and control over E.M.'s health, welfare, safety, and care, and as a result a special relationship was thereby established between E.M. and Defendant SB COUNTY.

67. Upon E.M. being declared a dependent of SB COUNTY and placed into the care, custody, and control of CFS, Defendants STELLA MARIS and FAP were hired and retained by Defendant SB COUNTY to provide services for E.M. pursuant to a written contract between the STATE, SB COUNTY, STELLA MARIS, and FAP. As a licensed provider Defendants STELLA MARIS and FAP had the responsibility to provide supervision, care and control of the minor, E.M. Defendants STELLA MARIS and FAP had the further responsibility to protect E.M. from injury harm, or violation of her personal rights while in its care and to ensure the welfare, health, and safety of E.M. As a result, Plaintiffs relied upon Defendants STELLA MARIS and OUR

HOUSE to fulfill its duties and responsibilities, and a special relationship thereby established between E.M. and Defendants STELLA MARIS and FAP.

68. STATE, through among other things, CCLD, had an oversight role that required monitoring, supervision and inspection of STELLA MARIS and FAP/OUR HOUSE, and related action based on the substantiation of issues complained of as to centers over which it has oversight, which would including child abuse.

69. Defendants STATE and SB COUNTY, and DOES 1 through 25, inclusive, knew or should have known that STELLA MARIS presented an environment where it was foreseeable that E.M. would be subjected to neglect and/or abuse. At the time of her placement, it was known or should have been known E.M. was being sexually assaulted and exploited. E.M. told a fellow STELLA MARIS staff member that she was being forced into prostituting herself, yet the staff member failed to intervene or contact police. STELLA MARIS knew or should have known Plaintiff E.M. was sexually assaulted by the male staff, Mike Williams.

70. Defendants STATE and SB COUNTY, and DOES 1 through 25, inclusive, knew or should have known that FAP presented an environment where it was foreseeable that E.M. would be subjected to neglect and/or abuse. At the time of her placement, it was known or should have been known that male residents and girl residents sheltered at FAP were not separated; male residents were allowed in the room with E.M and were smoking marijuana; liquor was brought into FAP by minors; adult staff were purchasing tobacco for the youth; and adult staff were smoking weed with E.M.

71. Despite the existence of the special relationships between E.M. and Defendants, each of them, breached the duty of due care under the special relationship while under the scope of their agency and employment, by failing and neglecting to fulfill or perform their respective duties to control, monitor, care for and protect the health, safety, and well-being of E.M. and other dependent minors while in centers subject to SB COUNTY and STATE'S jurisdiction, control, inspection and monitoring power. Government Code § 820 provides that an employee of a public entity is liable for his or her acts or omissions to the same extent as a private person, and under

Government Code 815.2 the public entity that employs the individual is vicariously liable for the torts of its employee committed in the scope of employment.

72. As a proximate result of the breach of duty of care under the respective special relationships created and existing between E.M. and Defendants, E.M. suffered injuries and damages as alleged herein. E.M. suffered physical and/or psychological abuse, neglect, and mistreatment, which was reasonably obvious and could, should, and/or would, have been discovered in the exercise of due care including, but not limited to, by investigating reports of suspected physical and/or psychological abuse. Had Defendants, and each of them, not breached their respective duties of due care under their special relationships, they could, should, or would have discovered the evidence of abuse, neglect and mistreatment of E.M. and taken measures to protect or remove E.M. from the facilities.

73. As a proximate result of the acts and omissions of Defendants, and each of them, E.M. sustained general and special damages as alleged herein, in amount within the jurisdictional limits of this court according to proof at trial.

## THIRD CAUSE OF ACTION
### NEGLIENCE
**(Plaintiff E.M. Against Defendants STATE, SB COUNTY, FAP, STELLA MARIS, and DOES 1 through 25)**

74. Plaintiffs incorporate and re-alleges each allegation set forth above as if fully set forth herein.

75. Upon E.M. being declared a dependent of the SB COUNTY and placed into the care, custody and control of CFS, Defendants STELLA MARIS and FAP, each licensed community care facilities, were hired, retained or contracted with by Defendant SB COUNTY to provide services pursuant to a written agreement, contract or memorandum of understanding. Defendants STELLA MARIS and FAP each had the responsibility to recruit, select, train, obtain background investigations on and certify individuals to serve as its providers.

76. Upon being entrusted with the custody, supervision, care and control of the minor Plaintiff E.M, Defendant STELLA MARIS and FAP had the further responsibility to prevent foreseeable harm

to Plaintiff E.M. and SB COUNTY had a continuing duty to supervise, manage and control the placement to ensure the care, health, welfare and safety of the minor Plaintiff. Furthermore, Defendant STATE, through CCLD, had a continuing responsibility to monitor the activity of STELLA MARIS and FAP, including but not limited to inspections and corrective action. As a result, Plaintiff relied upon the aforementioned Defendants to fulfill their duties and responsibilities, and a special relationship was thereby established between the Plaintiff and Defendants STATE, SB COUNTY, STELLA MARIS and FAP.

77. As a result of the special relationship, the aforementioned Defendants, and each of them, had an affirmative duty to supervise other residents of the STRTP and a duty to come to the aid of Plaintiff and to prevent abuse, neglect and/or mistreatment.

78. During the time Plaintiff was in the custody of SB COUNTY, Plaintiff's natural parents and/or guardians were prohibited from providing any supervision, control, protection, or care, except as specifically authorized and/or permitted by Defendant SB COUNTY. As a result of the Defendants' assumption of the duty to exercise supervision, care, control, and protection, the Plaintiffs was required to, and did, rely upon Defendants SB COUNTY, and the agents, entities and individuals to whom such duties were assigned or delegated, including Defendants STELLA MARIS, FAP, STATE, and Does 1 through 25, inclusive, to provide for the supervision, care, control, protection and provision of PLAINTIFF E.M.'s health, safety, and well-being, thereby further establishing the existence of a special relationship between the Plaintiff and said Defendants, and each of them.

79. Defendants STELLA MARIS and FAP are not, and never have been, public entities. Defendants STELLA MARIS and FAP are, and at all times have been, private entities and therefore are not eligible for any qualified discretionary act immunities afforded to public entities and their employees.

80. Plaintiffs further alleges that the aforementioned Defendants, and each of them, failed and neglected to establish and implement policies and procedures to ensure the health, safety and well-being of Plaintiff and other minors. Had these Defendants not breached their respective duties of due care under their special relationships, they could, should, or would have discovered

evidence of abuse, neglect and/or mistreatment of the Plaintiff, or of the unfitness and neglect of providers at STELLA MARIS and FAP and taken measures to protect or remove the Plaintiff E.M. from the facility.

81. Defendant MOVAL has a duty to maintain and provide safe public parks to members of the general public, and particularly minor children. Defendant MOVAL breached that duty failing to maintain and provide safe public parks. Specifically, Defendant MOVAL created an environment that made it conducive for sexual liaisons to occur in its city's parks. Because of this, the parks were known as a place where such activity could occur out of the sight of city employees. With this knowledge Plaintiff E.M. was able to be sex trafficked at Moreno Valley Community Park without any restriction or prevention by those who have duty keep the park safe.

82. Had Defendant MOVAL breached its respective duty of due care, they could, should, or would have discovered evidence of sexual exploitation and/or mistreatment of the Plaintiff E.M. at its public park, and could have taken measures to protect or prevent further harm to Plaintiff E.M.

83. As a proximate result of the acts and omissions of the aforementioned Defendants, and each of them, Plaintiff sustained general and special damages as alleged herein, in amounts within the jurisdictional limits of this court according to proof at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS U.S.C. 1983

**(Plaintiff E.M. Against Defendant STATE, SB COUNTY, and DOES 1 through 25)**

84. Plaintiff E.M. incorporates and re-alleges each allegation set forth above as if fully set forth herein.

85. Plaintiff E.M. is informed and believe and thereon alleges that once the government assumes wardship or established dependency of a child; the state owes the child, as part of that person's protected liberty interest under the Fourteenth Amendment of the United States Constitution, reasonable safety, and minimally adequate care.

86. At all times applicable herein, said liberty interest and duty of the state clearly established such that any reasonable social worker or other person jointly acting under the color of state law

-19-

Complaint

would know that children, such as E.M., should not be placed or maintained in situations where it is reasonably foreseeable that they would be exposed to abuse and/or neglect and/or other mistreatment by individuals or that it is reasonably foreseeable that their civil and personal rights would be violated.

87. Plaintiff E.M. is informed and believes and thereon alleges that Defendants STATE, SB COUNTY and DOES 1 through 25 knew or reasonably should have known that STELLA MARIS and FAP presented a foreseeable risk of abuse and/or neglect and violations of civil and personal rights upon children with special health care needs and that E.M.'s personal and civil rights would foreseeable be violated, Yet despite this knowledge, Defendants STATE and SB COUNTY intentionally or with a reckless disregard and deliberate indifference for the safety of E.M., placed and maintained E.M. in a situation where it was reasonably foreseeable that Plaintiff E.M. would be subjected to physical abuse and/or neglect and that her constitutional and personal rights would be violated and Defendants maintained E.M. in that placement despite actual and constructive knowledge of ongoing mistreatment, abuse, neglect and/or violation of E.M.'s personal and civil rights.

88. Plaintiff E.M. alleges that Defendants STATE and SB COUNTY were acting under color of state law when they breached their duties to E.M. by placing and maintaining her in a placement presenting exposure to sexual assault/exploitation, abuse, neglect, and/or violation of civil and personal rights. Plaintiff E.M. alleges that Defendants STATE and SB COUNTY and its employees and agents participated with Defendants FAP, STELLA MARIS, and DOES 1 through 25 in the joint activity of the placing Plaintiff E.M. in centers meant to preserve her rights including rights of safety, and thereby acted under color of state law.

89. As a direct and proximate result of the acts and omissions of Defendants STATE and SB COUNTY, Plaintiff E.M. has suffered and continues to suffer injuries alleged herein, including but not limited to her person; pain; humiliation; anxiety; mental anguish; emotional distress; damage to his reputation and personal relations; and other general and special damages in an amount to be ascertained according to proof at trial. Plaintiff suffered general and special damages within the jurisdictional limits of this court and seeks them according to proof at trial.

1    Plaintiff has further incurred attorney's fees and other costs that Plaintiffs seeks to recover

2    pursuant to 42 U.S.C. §1988.

3                                **FIFTH CAUSE OF ACTION**

4                              ***MONELL*-RELATED CLAIMS**

5    **(Plaintiff E.M. Against DEFENDANTS STATE, SB COUNTY and DOES 1 THROUGH 25)**

6    90. Plaintiff E.M. incorporates and re-alleges each allegation set forth above as if fully set forth

7        herein.

8    91. Defendants SB COUNTY and STATE, including through its child welfare services agency CFS

9        and CCLD, are each a "person" within the meaning of 42 U.S.C. §1983 and subject to Monell

10       liability under *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and each of

11       them, acted under color of state law when committing the acts alleged herein, in violation of

12       Plaintiff E.M.'s rights.

13   92. Defendant COUNTY, including through its child welfare services agency CFS; and Defendant

14       STATE, including through CCLD, and, as to each, those individuals in their official capacities

15       who had supervisory and/or policy making authority, had a duty to Plaintiffs at all times to

16       establish, implement and follow policies, procedures, customs and/or practices (hereinafter

17       referred to as "policy" or "policies" which confirm and provide the protections guaranteed

18       Plaintiffs under the Fourteenth Amendment which include without limitation Plaintiff E.M's

19       liberty interest in reasonable safety and minimally adequate care, and the right to substantive and

20       procedural due process. Said Defendants also had a duty to use reasonable care to select, assign,

21       supervise, train, control, and review the activities of all their agents, officers, employees, and

22       those acting under them including within the CFS and the CCLD, so as to protect these

23       constitutional rights; and to refrain from acting with deliberate indifference to the constitutional

24       rights of Plaintiff and other children with special health care needs in order to avoid causing the

25       injuries and damages alleged herein.

26   93. Defendants, including SB COUNTY and STATE, established and/or followed procedures,

27       customs, and/or practices which were the moving force behind the violations of Plaintiff E.M.'s

28       constitutional rights, including rights under the Fourteenth Amendments, by, but not limited to:

a. The custom and/or practice of failing to take any meaningful action to remove a child who presence poses a threat to several other children in the same placement.

b. The custom and/or practice of misrepresenting and/or concealing facts about the status of a residence meant to house troubled children.

c. The custom and/or practice of allowing social workers to forgo reporting and/or investigating reports of neglect and/or abuse.

d. The custom and/or practice of leaving a child, like E.M. in a youth shelter in which had the inability to care and protect the child.

e. The custom and/or practice of exhibiting deliberate indifference in implementing a practice of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees, and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to the placement of children with special health care needs, reporting of known or suspected child neglect and abuse and the investigation of known or suspected child abuse or neglect. (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs will seek leave to amend this pleading as more information becomes available.

94. Defendant SB COUNTY, including by and through its child welfare services agency CFS; and Defendant STATE, including by and through its agency CCLD and its policymaking officials, each breached its duties and obligations to Plaintiff E.M. by, but not limited to, failing to establish, implement and follow correct and proper Constitutional policies procedures, customs, and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately or with deliberate indifference permitting the Defendants, and DOES 1 through 25, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of affected children with special health care needs, including Plaintiffs herein.

95. Defendants SB COUNTY and STATE knew or should have known that a child has right to supervision and protection from harm inflicted while in centers such as STELLA MARIS and FAP and is entitled to reasonable safety and minimally adequate care. Defendants SB COUNTY and STATE knew, or should have known, that through their deliberate indifference and by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usage would, and did, cause Plaintiff E.M. to be injured and damaged by those policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff E.M.; and that such policies were the moving force behind the violation of Plaintiff E.M. constitutional rights as alleged herein above.

96. The actions, and/or inactions of Defendant SB COUNTY and STATE were the moving force behind and direct and proximate cause of Plaintiff E.M. injuries, as alleged herein; and as a result, Plaintiff E.M. has sustained sever personal injuries and general and special damages, to an extent and in an amount to be proven at trial. Plaintiff E.M. has further incurred attorney's fees and other costs that Plaintiff seeks to recover to 42 U.S.C. 1988.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(Plaintiffs CHARLES M. and E.M. Against Defendants STATE, SB COUNTY, STELLA MARIS, FAP. and DOES 1 through 25)**

97. Plaintiffs incorporates and re-alleges each allegation set forth above as if fully set forth herein.

98. Defendants STATE, SB COUNTY, STELLA MARIS and FAP, and its employees, agents, and contractors, had an obligation to supervise, care, and protect children with special health care needs. Further, said Defendant had a duty to prevent damage that would severely interfere the parent child relationship.

99. While in the custody, control, or supervision of the foregoing Defendants, E.M. was subject to sex trafficking and sexual intercourse while a minor as further described above. When Plaintiff CHARLES M. and TERRY M, reported the wrongful conduct, including that Plaintiff E.M. was

being forced into prostitution against her will, the foregoing Defendant, including its agents/employees, suffered from a lack of desire and/or failure to intervene or enforce adequate policies and procedures for the proper response to sexual assault/exploitation, specifically to the sexual assault/exploitation at issue in this Complaint. By doing so, they exacerbated and amplified the trauma to the actual assault/exploitation.

100.     The conduct of the aforementioned Defendants negligently caused emotional distress to Plaintiffs; as to Plaintiff E.M. due to the stress of being trafficked and abused against her will; as to Plaintiff CHARLES M. due to the severe interference with the parent child relationship. Among other things, CHARLES M. saw videos that demonstrated the abuse taking place involving his daughter, including on the premises of the very places that were assigned to protect Plaintiff E.M. and keep her safe, including but not limited to at STELLA MARIS and FAP (OUR HOUSE).

101.     The aforementioned Defendants knew or reasonably should have known that E.M., who was volatile, subject to abuse, and that ultimately had experienced sexual abuse and sexual exploitation, and had access to drugs (which was given to her by staff members of the centers themselves) would experience emotional distress. They also knew or should have known that CHARLES M's exposure to the things happening to his daughter while in their custody would have a devastating impact.

102.     The aforementioned Defendants could reasonably foresee that its action and omissions would have caused emotional distress to Plaintiffs. The negligence of the foregoing Defendants was a substantial factor in causing the emotional distress of Plaintiffs E.M. and CHARLES M. As a result of the conduct of the aforementioned Defendants, Plaintiffs each sustained severe emotional distress, physical manifestation of emotional distress, emotional anguish, fear, anxiety, humiliation, depression, and other physical and emotional injuries, and damages, in past, present, and future, for which this claim is made. The injuries suffered by Plaintiffs, and each of them, are substantial, continuing, and permanent.

103.     As a result of the above-described conduct, Plaintiffs were put at unnecessary risk of harm and in many cases suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestation of emotional distress including depression, anxiety, humiliation, loss of enjoyment of life. and may incur expenses for medical and psychological treatment, therapy, and counseling. Plaintiffs have suffered damages, both general and special damages, including but not limited to medical bills incurred and continually incurred by each Plaintiff, in an amount presently unknown but exceeding the minimum jurisdictional limits of this Court and as proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs E.M. (through conservators CHARLES M. and TERRY M), and CHARLES M. (as an individual plaintiff), respectfully requests the following relief:

### ON THE FIRST, SECOND, AND THIRD CAUSES OF ACTION

1.  For general and special damages, in and amount to be determined according to proof at trial;
2.  For costs of suit incurred in this action; and
3.  For such other and further relief as the Court deems proper.

### ON THE FOURTH AND FIFTH CAUSES OF ACTION

1.  For a Declaration that Defendants' actions and/or omissions violated Plaintiff E.M.'s rights under law;
2.  For compensatory damages, in and amount to be determined according to proof at trial;
3.  For reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and
4.  For such other and further relief as the Court deems just and proper.

### ON THE SIXTH CAUSE OF ACTION

1.  For damages according to proof, and for interest thereon at the going legal rate;
2.  For costs and expenses of suit incurred herein; and

//
//

3.  For such other and further relief as the Court deems just and proper.

Dated:  November  30, 2022

McCune Law Group

By:_____

Richard D. McCune
Joseph L. Richardson
Attorneys for Plaintiff

Complaint