## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [49]

Before the Court is a motion to dismiss filed by Defendant San Bernardino County (the "County"). ECF No. 49. For the foregoing reasons, the motion is GRANTED.

### I.    Factual and Procedural Background

In or about August 2021, Plaintiff E.M.'s ("Plaintiff") father and stepmother, Charles M. ("Charles") and Terry M. ("Terry"),[1] voluntarily surrendered Plaintiff to the County due to her mental health. Fifth Am. Compl. ("5AC") ¶ 19, ECF No. 42. Plaintiff was seventeen years old at the time. *Id.* The County assured Plaintiff's parents that she would be placed in a "structured, yet compassionate environment." *Id.* ¶ 25.

The County placed Plaintiff at an institution called Our House, "a youth in crisis shelter for runaway and homeless youth" in Mentone, California. *Id.* ¶ 24. Our House is a subdivision of Defendant Family Assistance Program ("FAP"), a "non-profit public benefit corporation located in the County of San Bernardino, State of California." *Id.* ¶ 5.

Plaintiff's placement at Our House was temporary; she was eventually moved to the facility of

---

[1] Charles and Terry are also plaintiffs in this case.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

Defendant Stella Maris ("Stella Maris"), "a short-term therapeutic residence/group home for adolescent girls" in Moreno Valley, California. *Id.* ¶ 26. Plaintiff was brought to Stella Maris by County Social Worker Wendy Smith ("Smith"). *Id.* ¶ 27. Smith told Plaintiff that "she would be available to talk to her at any time pertaining to any issues she may have" while at Stella Maris, because the County was placing her there and it was the County's job to make sure that she was doing well there. *Id.*

On or about March 7, 2022, Plaintiff was visiting her parents for a routine weekend visitation. *Id.* ¶ 29. Terry noticed that Plaintiff was visibly upset and asked Plaintiff what was wrong. Plaintiff told Terry that she was "having 'sex for money'" and that "it was not by choice." *Id.* Plaintiff then catalogued to Terry the following experiences which occurred at Our House: (1) boys sat on Plaintiff's bed with Plaintiff in her room, (2) boys smoked marijuana from a vape pen with Plaintiff, (3) youth left Our House and went on "bottle runs" for alcohol, (4) Our House staff bought tobacco for the youth hosted there, and (5) Our House staff smoked marijuana with Plaintiff. *Id.* ¶ 30. Plaintiff also alleged that Our House staff members designated specific times during which the youth housed there were permitted to smoke indoors; additionally, the staff members would give resident children a warning when it was time to clean up and hide their marijuana and alcohol. *Id.* ¶ 31. Lastly, Plaintiff shared that an Our House staff member found Plaintiff having drunken sex with a boy at Our House; the police became involved in this incident, but Our House did not share this information with the San Bernardino Children and Family Services Department ("CFS"). *Id.* ¶ 32.

Plaintiff then told Terry about the experiences she had while at Stella Maris. There, Plaintiff had been recruited by another resident, J.J., to have sex for money under the control of a pimp known as "Trap Zilla." *Id.* ¶ 34. Plaintiff would disappear from Stella Maris "for days at a time and would have sexual intercourse in different cars or at different parks in Moreno Valley with Trap Zilla's 'clients.'" *Id.* ¶ 34. Provocative videos were taken of J.J. and Plaintiff together which were then sent to these "clients" to allow them to choose which girl they wanted to have sex with. *Id.* ¶ 35. While Plaintiff initially found this experience to be "fun and games" which allowed her to feel "independent," things changed quickly. *Id.* ¶ 36. J.J. often hit Plaintiff and verbally harassed her. *Id.* When Plaintiff wanted to stop, Trap Zilla threatened to kill her or her parents if she spoke about this or reported him to the authorities or to her

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

parents. *Id.* Plaintiff felt compelled to continue participating. *Id.* Plaintiff was sex trafficked for about three months. *Id.* ¶ 35.

Lastly, Plaintiff told Terry that on or about January 31, 2022, she had been sexually assaulted at Stella Maris by an adult male named Mike Williams ("Williams"). *Id.* ¶¶ 37–39. Plaintiff had met Williams the night before at a small house party. *Id.* ¶ 38. On January 31, Williams demanded that Plaintiff let him into Stella Maris; the two entered the facility via Plaintiff's bedroom window. *Id.* ¶ 39. Williams and Plaintiff proceeded to have sex in the facility's shower. *Id.* Stella Maris staff members eventually became aware of the incident and demanded that Williams leave the facility. *Id.* ¶ 40. A staff member named Tracy contacted Terry to inform her, in minimal detail, of the incident. *Id.* Stella Maris did not file a police report or report the incident to CFS. *Id.* ¶ 41. Plaintiff states that Stella Maris staff were aware that she was "prostituting" herself but that they did nothing about it. *Id.* ¶ 43. Plaintiff also alleges other poor conditions at Stella Maris, such as aggressive staff members, physical restraint, and lax enforcement of bans on drugs and alcohol. *Id.* ¶¶ 50–53.

Terry attempted to contact Smith (Plaintiff's social worker) to update her on what she had learned from Plaintiff. *Id.* ¶ 47. Terry was unable to get in contact with Smith. *Id.* Eventually, Terry called the CFS crisis team, which was also unable to reach Smith. *Id.*

After being removed from Stella Maris, Plaintiff was once again placed back at Our House. *Id.* ¶ 54. This placement was temporary, and Plaintiff was subsequently moved to "an undisclosed location designed for women that were sex trafficked." *Id.* ¶ 55.

Plaintiff initiated this case with the filing of a complaint in the San Bernardino Superior Court on November 30, 2022. Notice of Removal 2, ECF No. 1. Plaintiff filed an amended complaint in her state court action on March 10, 2023. *Id.* The County then removed this case to federal court on April 21, 2024. *Id.*

At an initial status conference held on May 16, 2023, the Court bifurcated Plaintiff's state claims

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

and gave Plaintiff ten days to file an amended complaint once the County had produced any and all policies regarding safety, care, and housing. ECF No. 17. Plaintiff's second amended complaint was filed on June 5, 2023. ECF No. 19. A third amended complaint was filed on June 26, 2023. ECF No. 24. A fourth amended complaint was filed on July 14, 2023. ECF No. 27.

The County moved to dismiss Plaintiff's fourth amended complaint on July 28, 2023. ECF No. 29. The motion was fully briefed, and the Court took it under submission on August 25, 2023. ECF No. 36. The Court granted the County's motion on August 28, 2023, finding that Plaintiff had failed to plausibly allege an underlying constitutional violation which could support *Monell* liability. Order 3, ECF No. 37. The Court gave Plaintiff fourteen days to amend her complaint. Plaintiff filed her fifth amended complaint on September 11, 2023. ECF No. 42.

Plaintiff's fifth amended complaint alleges the following causes of action against the County: (1) breach of mandatory duties, (2) breach of duty of care arising under a special relationship, (3) negligence, (4) violation of civil rights under 42 U.S.C. § 1983, and (5) *Monell*-related claims. 5AC ¶¶ 59–103.

The County filed the present motion to dismiss Plaintiff's fourth and fifth causes of action (i.e., the federal claims which were not stayed) on September 25, 2023. ECF No. 49. A hearing was set for October 23, 2023, but the Court took the matter under submission and vacated the hearing. ECF No. 58.

**II.    Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint.  See Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. Discussion

#### A. Plaintiff Has Failed to Allege That the County is Liable Under § 1983 or *Monell* Because She Has Failed to Establish a Policy of Deliberate Indifference

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell*, 436 U.S. At 694). As the Court explained in its previous order, *see* ECF No. 37, to plead a *Monell* claim, a plaintiff must show the following: "(1) [s]he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [her] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). There are "three ways a plaintiff can satisfy *Monell*'s policy requirement: The municipal government acts pursuant to an express official policy, the government maintains a longstanding practice or custom, or the act was committed or ratified by an official with policy-making authority." *Scanlon v. Cty. of L.A.*, No. 21-55999, 2024 U.S. App. LEXIS 2358, at *59-60 (9th Cir. Feb. 2, 2024).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

The County rightly points out that Plaintiff's complaint "cites to specific facts on the part of Our House and Stella Maris, [but] contains only vague and conclusory allegations that the County failed to 'establish and implement policies and procedures' to ensure Plaintiff's safety and wellbeing." Def.'s Mot. to Dismiss 7, ECF No. 49 (citing 5AC ¶ 84). These allegations are insufficient to state a *Monell* claim under the familiar plausibility standard articulated in *Twombly* and *Iqbal*. Specifically, Plaintiff's complaint cites three lawsuits against San Bernardino CFS—one which alleged that dozens of foster children were placed in the home of a known child molester and two in which two children in foster care were placed in homes in which one child was subjected to physical abuse and the other was subjected to repeated sexual abuse. 5AC ¶ 14–15. Three instances of CFS failure are not sufficiently numerous to establish a policy or custom that satisfies *Monell. See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Plaintiff also cites past complaints against Our House and Stella Maris, which Plaintiff alleges should have put the County on notice that problems existed at these facilities. 5AC ¶ 16–18. More specifically, Plaintiff alleges a "custom and/or practice of being non-responsive to the complaints made by inhabitants of a Short-Term Residential Therapeutic Program (STRTP) about the conditions therein, including but not limited to issues with the quality of services delivered by COUNTY agents that are the employees/contractors of the homes where SB COUNTY places children." 5AC ¶ 99(f).

With regards to Our House, Plaintiff cites two incidents: (1) a July 8, 2021, report that a youth resident of the facility went AWOL which was subsequently substantiated, and (2) a March 16, 2021, complaint which alleged that Our House did not prevent youth from engaging in CSEC (commercial sexual exploitation of children) activity based on an incident in which an Our House staff member allegedly saw a youth resident sitting on a sidewalk outside of a motel where she would be picked up by adult men. 5AC ¶ 16. These two incidents are not numerous enough to suggest that the County was ignoring widespread complaints about Our House in a manner that would constitute a custom or practice for *Monell* purposes.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|----------|----------------------|------|-------------------|
| Title    | *E.M. et al v. County of San Bernardino et al.* | | |

Plaintiff also cites the fact that Stella Maris Growth Center II received five "Type A" citations (for immediate health, safety, or personal rights impact) and eighteen "Type B" citations (for potential health, safety, or personal rights impact) between 2017 and 2022. 5AC ¶ 18. Plaintiff's complaint contains a sampling of these incidents, which concern drug use, lack of supervision, and CSEC. Plaintiff also cites two incidents at Stella Maris Growth Center III, one which alleged drug use on site and another which alleged inappropriate threats made by staff to residents. *Id.* The relationship between Stella Maris Growth Center II and Stella Maris Growth Center III is unclear from Plaintiff's complaint; it is also unclear at which of the two facilities Plaintiff was a resident. The two incidents highlighted at Stella Maris Growth Center III are not sufficiently numerous to constitute a custom or practice per *Monell*. With regards to Stella Maris Growth Center II, five substantiated claims in five years (i.e., the Type A citations) are not alone numerous enough to suggest that the County was ignoring widespread complaints about Stella Maris in a manner that would constitute a custom or practice for *Monell* purposes. Once the additional citations for potential violations are factored in (eighteen in five years), that calculus begins to shift in the other direction. But the Department of Social Services reports incorporated by reference into Plaintiff's complaint consistently fail to match Plaintiff's descriptions of them.[2] Those reports that are cited often point to unsubstantiated claims and outline plans to rectify past problems while avoiding future ones; these actions also suggest some efforts by the County to improve the facility. While Plaintiff's complaint comes close to satisfying the plausibility requirement—*only* as it relates to the County's placement of Plaintiff at Stella Maris—it is ultimately too plagued by defects and ambiguities to survive the County's motion to dismiss.

### B. Plaintiff's Claims Are Better Directed Towards Individual Defendants, But Even There She Fails to Allege Deliberate Indifference

In its previous order dismissing Plaintiff's complaint, the Court held that "Plaintiff ha[d] not

---

[2] The Court suspects that this is an innocent error made due to mistakes in the URL addresses included in the Complaint's footnotes.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

sufficiently explained either in her pleadings or in her opposition . . . the contours of the alleged constitutional violation which Plaintiff suffered." Order 3, ECF No. 37. The parties' briefs argue over whether Plaintiff has alleged a sufficient constitutional violation pursuant to the rationale of *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010). In *Tamas*, the Ninth Circuit noted that "[t]he Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Id.* at 842 (citing *Carlo v. City of Chino*, 105 F.3d 493, 501 (9th Cir. 1997)). "To violate due process, **state officials** must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" *Id.* at 844 (9th Cir. 2010) (citing *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)) (emphasis added). "Conduct that 'shocks the conscience' is 'deliberate indifference to a known[,] or so obvious as to imply knowledge of, danger.'" *Id.* at 844 (*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006)). Put another way, "the deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Id.* at 845 (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010), *overruled on other grounds by Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). These standards articulated in *Tamas* are to be applied to individual state officials, and not to the County, for the reasons discussed in Section III-A *supra*.

Here, even if Plaintiff had addressed her complaints against individual state officials, she would still have failed to allege facts that meet the deliberate indifference standard, and that standard must be met in order to find a violation of due process. Plaintiff's deliberate indifference argument is based on the actions—and failures to act—of the County's social workers "charged with looking in on [Plaintiff] and confirming the stability of the situations where [Plaintiff] was housed." Pls.' Opp. to Def.'s Mot. to Dismiss 5, ECF No. 51. Specifically, Plaintiff argues that her "contact with SB COUNTY social workers made them aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and SB COUNTY drew said inference." *Id.* Plaintiff also alleges that "previous documented problems" at Stella Maris made the County "aware of facts from which an inference could be drawn that

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:23-cv-00712-SVW-SP | Date | February 14, 2024 |
|---|---|---|---|
| Title | *E.M. et al v. County of San Bernardino et al.* | | |

a substantial risk of serious harm exists, and SB COUNTY drew said inference." *Id.* at 5–6. Lastly, Plaintiff argues that "the serious nature of the emotional and other issues of the people that STELLA MARIS and OUR HOUSE actually served worked to create the implication of the knowledge of the danger presented, even if said danger was not known outright." *Id.* at 6.

As the County points out, Plaintiff's complaint is full of statements indicating that Stella Maris and Our House failed to report any of the alleged incidents to the County. Def.'s Reply ISO Mot. to Dismiss 3, ECF No. 56. Accordingly, there is no reason to think that the County's social workers, including Smith, were aware of them. Similarly, the unavailability of County social workers, including Smith, to reply to Plaintiff's outreach does not establish that these social workers knew of and ignored said outreach. Def.'s Mot. to Dismiss 8, ECF No. 49. Plaintiff was clearly in a vulnerable situation. However, County social workers lacked any specific information which would have made them subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. There are also no alleged facts demonstrating that either these social workers actually drew that inference or that a reasonable social worker would have been compelled to draw that inference.

**IV.    Conclusion**

Plaintiff has failed to adequately allege a § 1983 and/or *Monell* claim against the County. The County's motion is therefore GRANTED. Plaintiff's fourth and fifth causes of action (the only causes of action not stayed by this Court) are dismissed. Plaintiff is granted 30 days to amend her complaint, but the Court cautions her that it will be reluctant to allow a *seventh* amended complaint.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | PMC |